UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NANCY DeSAINT and BARBARA KEENAN,
on behalf of themselves and others similarly
situated,

        Plaintiffs,

    v.

DELTA AIR LINES, INC.

        Defendants.

**CIVIL ACTION NO. 13-11856**

**DELTA AIR LINES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

MORGAN, LEWIS & BOCKIUS LLP

Lisa Stephanian Burton (BBO # 562096)
Peter J. Mee (BBO #677081)

225 Franklin Street
Boston, MA 02100
(617) 341-7700
(617) 341-7701 (facsimile)

Ira G. Rosenstein (admitted *Pro Hac Vice*)
Brendan T. Killeen (admitted *Pro Hac Vice*)

101 Park Avenue
New York, NY 10178
(212) 309-6000
(212) 309-6001 (facsimile)

ATTORNEYS FOR DEFENDANT
DELTA AIR LINES, INC.

## <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.    STATEMENT OF FACTS ............................................................................. 3

    A.    INTRODUCTION .............................................................................. 3

        1.    DELTA'S FLIGHT ATTENDANTS ....................................... 3

        2.    FLIGHT ATTENDANT SCHEDULING .................................. 5

    B.    FLIGHT ATTENDANT COMPENSATION ....................................... 6

        1.    Duty Period Credit Formula ...................................................... 7

        2.    Duty Period Average Formula ................................................... 8

        3.    Flight Pay Formula .................................................................... 8

        4.    Trip Pay Credit Formula ............................................................ 9

        5.    Premium Pay ............................................................................ 10

III.    ARGUMENT ............................................................................................... 11

    A.    SUMMARY JUDGMENT SHOULD BE GRANTED UNDER THE
APPLICABLE STANDARD OF REVIEW ....................................... 11

    B.    DELTA'S  POLICY FULLY COMPLIES WITH MASSACHUSETTS
LAW ................................................................................................... 12

    C.    PLAINTIFFS' QUASI-CONTRACT CLAIMS MUST BE DISMISSED ......... 16

IV.    CONCLUSION ............................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).........................................................................................11, 12

*Benson v. Mass. Gen. Hosp.,*
    49 Mass. App. Ct. 530 (2000).............................................................................16

*Burns v. State Police Ass'n of Mass.,*
    230 F.3d 8 (1st Cir. 2000)...................................................................................12

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)............................................................................................12

*Coll v. PB Diagnostics Sys.,, Inc.,*
    50 F.3d 1115 (1st Cir. 1995)...............................................................................16

*Eveden, Inc. v. The N. Assurance Co. of Am.,*
    No. 10-10061, 2014 WL 952643 (D. Mass. Mar. 12, 2014) ...........................11, 12

*Hampel v. Autoridad de Energia Electrica de Puerto Rico,*
    716 F. Supp. 52 (D. Puerto Rico 1989)..............................................................15

*Huron Portland Cement Co. v. Detroit,*
    362 U.S. 440 (1960)............................................................................................12

*Indus. Welfare Com. v. Superior Court,*
    27 Cal.3d 690 (1980) ..........................................................................................12

*Mass. Eye & Ear Infirmary v. QLT, Inc.,*
    495 F. Supp. 2d 188 (D. Mass. 2007) ................................................................17

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) (*affirmed* 732 F.3d 29 (1st Cir. 2013))..............................11

*McArdle v. Town of Dracut,*
    909 F. Supp. 2d 48 (D. Mass. 2012) ..................................................................16

*McKeon v. Todd,*
    No. 971150B, 1998 WL 1270643 (Mass. Super. Ct. June 22, 1998) ....................16

*Roche v. Morgan Collection, Inc.,*
    882 F. Supp. 2d 247 (D. Mass. 2012) ................................................................17

*Santagate v. Tower,*
    64 Mass. App. Ct. 324 (2005)............................................................................17

*Sagar v. Fiorenza*,
   No. MICV201204081F, 2014 WL 794966 (Mass. Super. Ct. Jan. 18, 2014) .........................17

*Santiago v. Sherwin Williams Co.*,
   3 F.3d 546 (1st Cir. 1993) ....................................................................................................12

*United Air Lines, Inc. v. Indus. Welfare Com.*,
   211 Cal. App. 2d 729 (1963) ...............................................................................................12

**STATUTES**

455 Mass. Code Regs. § 2.01 ..............................................................................................2, 12

455 Mass. Code Regs. § 2.03(2) .............................................................................................15

Mass. Gen. Laws ch. 149, § 148 ............................................................................................12

Mass. Gen. Laws ch. 151, § 1 ................................................................................................12

**OTHER AUTHORITIES**

29 C.F.R. § 785.35 ..................................................................................................................15

FAR § 121.467 ..........................................................................................................................4

Fed. R. Civ. P. 56 ..............................................................................................................1, 2, 11

Pursuant to Federal Rule of Civil Procedure 56, Defendant Delta Air Lines, Inc. ("Delta" or "Defendant"), by and through its counsel, Morgan, Lewis & Bockius LLP, submits this Memorandum of Law in Support of its Motion for Summary Judgment.  For the reasons set forth below, this Motion should be granted.

## I.     PRELIMINARY STATEMENT

Nancy DeSaint ("DeSaint") and Barbara Keenan ("Keenan") (collectively, "Plaintiffs") have more than 73 years of combined experience as Flight Attendants.  They admit to receiving Delta's Flight Attendant compensation policies and they admit Delta paid them in accordance with those policies.  Delta always has credited and then compensated its Flight Attendants for all of the time that they work, in accordance with Massachusetts law.  Yet, despite their years of experience, direct knowledge of Delta's compensation policies, and sworn testimony in this matter, Plaintiffs filed this putative class action complaint replete with misstatements and mischaracterizations of Delta's compensation methodology.  Plaintiffs' inaccurate characterizations of how Delta's Flight Attendant compensation system works cannot (and do not) create a material factual issue in dispute.  As no such issues exist, all counts in their First Amended Class Action Complaint (the "Complaint") must be dismissed as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiffs specific claims are that Delta failed to compensate them for:  (1) their work before a flight takes off and after a flight lands; (2) travel time, including overnight travel and travel required to return to their base after a flight; and (3) on-call time.  Compl. ¶¶ 7-10.  However, Plaintiffs' pleadings are directly countered by Delta's actual written policy, Delta's actions, and, most tellingly, by Plaintiffs' own sworn deposition testimony.

Delta's methodology for compensating Plaintiffs is set forth in its Flight Attendant Work Rules (the "Work Rules") – a manual provided to Plaintiffs and every Flight Attendant.  Under the Work Rules, Delta applies four different formulas to determine the amount that Plaintiffs will

be paid on each one of their "Rotations", ultimately paying them based on the formula which results in the <u>highest</u> compensation amount for the Rotation.  Delta's system ensures not only that Plaintiffs are credited and paid for every hour of work, including boarding, deplaning, travel time, and on-call time, but also that they are always guaranteed to be paid an amount higher than the minimum wage.  Plaintiffs have not and cannot present any evidence suggesting that they were ever paid less than the minimum wage for hours worked.

During their depositions, Plaintiffs acknowledged that they reviewed the Work Rules and that they had direct access to Delta's Pay Desk, which was staffed by Delta personnel available to answer any questions Flight Attendants may have about their compensation or its calculation methods.  Both Plaintiffs further admitted to being fully aware of the various compensation formulas, how the calculations were applied, and, most importantly, that they were <u>always</u> paid the highest pay amount after applying each of the four formulas.

Massachusetts law does not prohibit employers like Delta from utilizing different methods for calculating compensation for hourly employees.  Nor does Massachusetts require employers to establish a uniform pay rate for all tasks and duties to be performed by an employee.  Indeed, the Massachusetts Minimum Wage Regulations specifically recognize that an employer may pay an employee in any number of ways, including any basis <u>other</u> than an hourly rate, so long as the employer pays its employees at least the minimum wage for all hours worked. *See* 455 Mass. Code Regs. § 2.01.  Delta's compensation system ensures that all hours worked by Plaintiffs are accounted for and that Plaintiffs are paid far more than the minimum wage for all hours worked in full compliance with the statute and regulations.

In persisting with this action despite the incontrovertible evidence demonstrating the inaccuracy of their allegations, Plaintiffs fail to meet even the most basic standard necessary to state a cognizable claim let alone withstand summary judgment under Rule 56.  There are no material facts in dispute here.  Delta's Work Rules set forth a methodology that pays Plaintiffs at

least a minimum wage for all hours worked and both Plaintiffs have admitted that they were always paid pursuant to those Work Rules.  To the extent that Plaintiffs attempt to twist the plain meaning of the Work Rules in an effort to re-craft their Complaint or avoid summary judgment, those efforts cannot by themselves create material factual issues.  Rather, it is for the Court to review the Work Rules and then confirm as a matter of law whether they comport with Massachusetts law.

Because Plaintiffs fail to meet their burden and no material facts are in dispute, Delta's Motion should be granted in its entirety.

## II.   STATEMENT OF FACTS[1]

### A.   INTRODUCTION

Delta provides scheduled air transportation for passengers and cargo throughout the United States and around the world.  Def. 56.1 ¶ 1.  Its route network is centered on a system of hub and international gateway airports that the Company operates in 11 domestic and international locations.  Def. 56.1 ¶ 2.  As of December 31, 2013, Delta employed approximately 78,000 employees worldwide.  Def. 56.1 ¶ 3.  Currently, Delta employs approximately 19,900 Flight Attendants in the United States, who are primarily based at one of Delta's eight domestic hubs, including its operations at Logan International Airport in Boston, Massachusetts.[2]  Def. 56.1 ¶¶ 4, 5.

#### 1.   DELTA'S FLIGHT ATTENDANTS

Unlike employees who work a set schedule with predetermined start and end times for their shifts (*e.g.*, Monday through Friday from 8:00 a.m. to 5:00 p.m.), Delta's Flight Attendants

---

[1] A more detailed recitation of the facts is contained in Defendant's Rule 56.1 Statement of Undisputed Facts ("Def. 56.1") submitted herewith. All abbreviations and citations herein are as defined in Def. 56.1.

[2] During certain periods of their employment with Delta, Plaintiffs were employed as Flight Attendants based out of Logan International Airport.  Def. 56.1 ¶ 9.  DeSaint is currently a Flight Attendant for Defendant, a position she has held for 29 years, while Keenan was a Flight Attendant for 44 years for Delta before retiring in June 2012.  Def. 56.1 ¶¶ 6, 7.  For each of reference, for purposes of this Motion only, Delta will refer to Keenan as if she were a current Flight Attendant.

work a fluctuating schedule that is dependent on the flights within the airline's route network to which they are assigned following a seniority-based bid process.  Def. 56.1 ¶ 14.  Generally, a Flight Attendant begins his or her assignment (or "Rotation")[3] by reporting to the airport (typically, the Flight Attendant's base) at a designated time for "Sign-In" and letting the company know that he or she is present to work the assigned Rotation.  Def. 56.1 ¶ 15.  Next, the Flight Attendant attends a pre-flight briefing with the other Flight Attendants working the flight (the "Crew") and the assigned pilots.  Def. 56.1 ¶ 17.  The Flight Attendant then proceeds to the aircraft to perform a number of duties to ensure the aircraft cabin is ready to receive passengers before assisting with the boarding process.  Def. 56.1 ¶ 18.  Once the plane pushes back from the gate (referred to as "Block Out"), the Flight Attendant performs the necessary safety demonstrations and other duties typically associated with Flight Attendants for the duration of the flight.  Def. 56.1 ¶¶ 19, 37.  Upon arrival at the destination, particularly when the flight pulls into the gate (referred to as "Block In"), the Flight Attendant assists with the deplaning process after the boarding door has opened.  Def. 56.1 ¶ 20, 38.

If the Flight Attendant's Duty Period (see footnote 3 *supra*) ends in a destination city other than the Flight Attendant's base, he or she is released from work into Layover (usually overnight) until the next leg of the Rotation begins.[4]  Def. 56.1 ¶¶ 21-22.  A Layover is a period of rest between Duty Periods of the Flight Attendant's rotation.  Def. 56.1 ¶ 21-23.  During a Layover, a Flight Attendant is free to sleep, eat, shop, sightsee, or engage in any other personal activity he or she chooses.  Def. 56.1 ¶ 23.  If the Flight Attendant has another flight segment

---

[3] A "Rotation" covers the period from when Flight Attendants first report to the base for an assigned series of flights, through their release from a final "Duty Period."  Def. 56.1 ¶ 28.  A Rotation may be a one-day trip or a multi-day trip with one or more overnight Layovers in locations away from the Flight Attendants' base.  Def. 56.1 ¶¶ 22, 30.  A Rotation may also consist of one or more flight segments or Duty Periods (*e.g.*, Boston to Los Angeles or Boston to New York City to Atlanta), while a Duty Period can include one or more flights and span more than one day.  Def. 56.1 ¶¶ 29, 32-33.

[4] The Federal Aviation Administration's regulations set forth specific Duty Limitations and Rest Requirements that govern the maximum amount of time a Flight Attendant may work within a Duty Period and the minimum amount of rest a Flight Attendant is required to take before beginning his or her next Duty Period.  F.A.R. §121.467.

assigned within the existing Duty Period following arrival at a destination city, the Flight

Attendant may rest or engage in personal pursuits until the Report Time for the next flight.  Def.

56.1 ¶ 24.  Typically, the Flight Attendant's Rotation will end with the Flight Attendant

returning to his or her base where he or she would be released from duty after deplaning.  Def.

56.1 ¶¶ 21, 25.

## 2.    **FLIGHT ATTENDANT SCHEDULING**

Every month, Flight Attendants, including both Plaintiffs here, receive a packet of

information (the "Bid Packet") that provides a listing of all available Rotations that are scheduled

to depart from the Flight Attendants' base the following month.  Def. 56.1 ¶ 27.  For each

Rotation, the monthly bid packet provides, *inter alia*, the Report Time.  Def. 56.1 ¶ 42.  The

Report Time is the time a Flight Attendant must be present at the airport either for Sign-In or to

return from a Layover.  Def. 56.1 ¶ 16.  The bid packet also provides the scheduled Flight Time,

which is measured from Block Out to Block In,[5] for each individual flight within the rotation.

Def. 56.1 ¶¶ 42, 79.  Next, the bid packet identifies the scheduled length of the Flight

Attendant's Duty Period, which, as discussed above, is the period of time from the Flight

Attendant's Report Time to release on a Layover or back at base.[6]  Def. 56.1 ¶¶ 31, 42.  Simply

put, the Duty Period encompasses all time during the pre-flight meeting, preparation of the

aircraft cabin, boarding, Flight Time, and deplaning of passengers.  Def. 56.1 ¶¶ 31, 35-36, 39.

---

[5] As discussed above, "Block Out" is when the plane pushes back from the gate, while Block In is when the plane
pulls into the gate.  Def. 56.1 ¶¶ 37, 38.

[6] The bid packet also provides, *inter alia*, the:  (1) Credit Time for the flight, if any; (2) total value of the Duty
Period, which combines the Flight Time and Credit Time; (3) Deadhead flight (*i.e.*, when a Flight Attendant is paid
for flying to another location within a rotation, but is not part of the Crew); and (4) total value of the trip, total flight
time, total credit, and total time away from base.  Def. 56.1 ¶¶ 42, 83.  As a result, a Flight Attendant reviewing the
bid packet would see the expected total value that a Rotation would generate for compensation purposes.  Def. 56.1
¶ 46.  Flight Attendants in turn can determine, before bidding for a particular Rotation, the projected compensation
(or value) under each formula using the information provided.  Def. 56.1 ¶¶ 46-47.  Although the expected amount
of compensation can be increased as a result of delays or other contingencies, Flight Attendants would not be
credited with a lower amount than what is listed in the bid packet.  Def. 56.1 ¶ 48.

The Duty Period also includes an extra 15 minutes built into the release time to account for deplaning after the aircraft pulls into the gate. Def. 56.1 ¶ 40.[7]

Using the bid packet, Flight Attendants bid for the rotations they desire from which a monthly schedule is generated.  Def. 56.1 ¶ 36.  After their initial schedule is set, Flight Attendants may make changes in their schedule, including swapping their rotations with those of other Flight Attendants.  Def. 56.1 ¶ 37.  Delta does not know whether a Flight Attendant has worked his or her scheduled flights until the flights are complete. Def. 56.1 ¶ 38.

### B.    FLIGHT ATTENDANT COMPENSATION

The rules, policies and scheduling procedures for Delta Flight Attendants, including the policies regarding Flight Attendant compensation, are located in Delta's Work Rules.[8]  Def. 56.1 ¶ 58.  Whenever Delta revises the Work Rules, Flight Attendants are provided the new versions. Def. 56.1 ¶ 56.  Each new version identifies the sections in the Work Rules that have been amended and updates the date at the top of each of the amended pages so that Flight Attendants can see when those pages were last amended.  Def. 56.1 ¶ 57.

All Delta Flight Attendants, including Plaintiffs, are compensated for their Rotations and Duty Periods in accordance with the Work Rules.[9]  Def. 56.1 ¶¶ 60-61.  As described in the Work Rules, four calculations are used to determine actual compensation: (1) Duty Period Credit; (2) Duty Period Average; (3) Flight Pay; and (4) Trip Credit.  Def. 56.1 ¶ 69.  Because of the vicissitudes of air travel, its unique operational requirements and the impossibility of predicting the actual duration of flights, Duty Periods and Rotations, Delta calculates each of these formulas for all Flight Attendant rotations, and then pays the Flight Attendant using

---

[7] Should deplaning take more than 15 minutes or should a Flight Attendant's release from a duty period occur more than 15 minutes after the plane blocks in at the gate, a Flight Attendant is to call the scheduling desk to adjust the release time for the duty period accordingly; the adjustment is then applied to each Flight Attendant who worked the flight.  Def. 56.1 ¶ 41.

[8] Plaintiffs read and always had access to Delta's Work Rules.  Def. 56.1 ¶¶ 51-55.

[9] Flight Attendants are compensated for a charter flight in the same manner in which they are compensated for any other flight.  Def. 56.1 ¶ 72.

whatever formula results in the <u>highest</u> compensation for that Flight Attendant for that particular rotation. Def. 56.1 ¶¶ 69-70. That is, for every trip, Delta calculates the total number of credits a Flight Attendant would receive under each formula, multiplies it by the Flight Attendant's Flight Pay Rate,[10] and/or other appropriate rate of pay under the Work Rules (including premium pay for certain categories such as serving as Purser or Flight Leader), compares the sums, and pays the greatest total value. Def. 56.1 ¶ 70.

As a result, a Flight Attendant may be paid at a different hourly rate depending on the variations within, and the compensation formula applied to, each Rotation. Plaintiffs here fully understood that there were different calculations used to determine compensation. Def. 56.1 ¶ 71.

### 1.    Duty Period Credit Formula

Duty Period is defined as the period of time from scheduled or actual Report Time (whichever is later) to release in the base or on a Layover. Def. 56.1 ¶ 31. Under the Duty Period Credit formula, Delta applies one hour of the Flight Pay Rate for every two hours a Flight Attendant is on duty for any given duty period. Def. 56.1 ¶ 73. For example, using DeSaint's 2013 Flight Pay Rate[11] of $49.96 per hour, she received a Duty Period Credit of $24.98 for every hour within each Duty Period. Def. 56.1 ¶ 75. The Duty Period Credit is akin to traditional compensation structures, ensuring that all time worked by every Flight Attendant is accounted for and credited and that every Flight Attendant, including Plaintiffs here, is paid well above minimum wage for every hour worked. Indeed, the Duty Period Credit is a "floor", guaranteeing that all work hours are credited and paid for at above the minimum wage.

---

[10] Delta's formula-based Flight Attendant compensation policy follows the airline industry standard of applying a base rate, which Delta defines as "Flight Pay Rate." Def. 56.1 ¶ 62. At Delta, the Flight Pay Rate is based on an individual's length of service (seniority) and is set forth in the Work Rules. Def. 56.1 ¶ 63. Based on their length of service, as well as general pay increases granted by Delta, Plaintiffs' Flight Pay Rate was $43.57 per hour as of January 1, 2010, $45.75 per hour as of October 1, 2010, $47.58 per hour as of July 1, 2012, and $49.96 per hour as of January 1, 2013. Def. 56.1 ¶¶ 64-67.

[11] For purposes of this Motion, all examples utilize DeSaint's 2013 Flight Pay Rate.

## 2.    Duty Period Average Formula

The Duty Period Average formula is intended to provide Flight Attendants whose Rotation consists of relatively short flight segments within multiple duty periods with higher compensation than they would receive under the remaining formulas.  Def. 56.1 ¶ 76.  The Duty Period Average formula applies an average credit of four hours and 45 minutes to every duty period within a rotation.  Def. 56.1 ¶ 77.  To calculate the total credits earned under this formula, Delta adds the number of Duty Periods within a Rotation, multiplies it by the average credit of 4 hours and 45 minutes and multiplies that result by the appropriate Flight Pay Rate described above.  Def. 56.1 ¶ 78.  If the result is higher than the actual Duty Period Credit calculation for the Rotation (and also higher than the other two calculation methods described below), the Duty Period Average is used to pay the Flight Attendant for the Rotation.  Def. 56.1 ¶¶ 69-70.

## 3.    Flight Pay Formula

The Flight Pay formula is designed to provide for higher compensation to Flight Attendants for Rotations where there is a relatively high percentage of Flight Time.  Def. 56.1 ¶ 80.  The Flight Pay Formula multiplies the particular Flight Attendant's Flight Pay Rate to the greater of the scheduled flight time (*i.e.*, what was estimated in the bid packet) or the actual flight time.  Def. 56.1 ¶ 81.  That amount would then be paid to a Flight Attendant to cover all hours worked during the Rotation, if the calculation generated the highest amount of the four formulas.  Def. 56.1 ¶¶ 68-69.  As its name suggests, Flight Time begins at the time the aircraft Blocks Out (*i.e.*, pushes out) from the gate at one location and ends when the aircraft Blocks In (*i.e.*, pulls into) the gate at its next location.  Def. 56.1 ¶¶ 37-38, 79.  The Flight Pay formula also includes "Deadhead" pay, when a Flight Attendant is transported by plane as a passenger, rather than as a crew member, for an assignment that is to begin at another location.  Def. 56.1 ¶¶ 82-84.

Depending on the variations within a Rotation, there are times when the Duty Period Credit formula will result in a higher average hourly rate than the Flight Pay calculation and vice

versa.  For example, if DeSaint's Flight Time on a particular rotation was 10 hours but she was on duty for an additional 11 hours on a rotation, her Flight Pay calculation would be $490.96 (10 hours x $49.96 per hour), an average rate of $23.97 per hour for each hour she was on duty. However, her Duty Period Credit would be $524.58 (21 hours at $24.98).[12]  Conversely, if DeSaint's Flight Time on a particular rotation was 10 hours but she was on duty for an additional 9 hours on a rotation, her Flight Pay calculation would be $490.96 (10 hours x $49.96 per hour), an average rate of $25.84 per hour for each hour she was on duty, while her Duty Period Credit would be $474.62 (19 hours at $24.98).  In either event, DeSaint would be paid the higher amount.  Def. 56.1 ¶¶ 69-70.  And under no circumstances could she make less than $24.98 for every hour she was on duty (*e.g.,* working) – far greater than any applicable minimum wage. Def. 56.1 ¶¶ 69-70, 75.

### 4.     Trip Pay Credit Formula

Delta's fourth formula is based on Trip Pay Credit.  Under that formula, Delta utilizes the Flight Attendant's "Time Away From Base" as the baseline measurement rather than just the time they are on duty (working).  Def. 56.1 ¶¶ 85-86.  Time Away From Base is the total number of hours between a Flight Attendant's initial reporting for duty at the beginning of a rotation to the Flight Attendant's final release at the end of the rotation.  Def. 56.1 ¶ 85.  Unlike the other three formulas, this calculation includes the time that a Flight Attendant is <u>not</u> on duty during the rotation and thus, includes non-compensable time such as traveling to and from airports while on Layover, going out to dinner, sleeping, visiting local sites, or similar activities. Def. 56.1 ¶¶ 23, 86.  Applying this formula, Delta credits Flight Attendants with one hour of their Flight Pay Rate for every three and a half hours spent away from base during a rotation.  Def. 56.1 ¶ 87.

Thus, if DeSaint began duty at 9 a.m. on a Monday, had flight time of 8 hours, and ended duty at 9 p.m. but did not return to base until 9 a.m. on Tuesday, her total Time Away from Base

---

[12] This does not include additional premium pay she might have received.  *See* discussion *Infra* at pp. 11-12.

would be 24 hours.  DeSaint's Time Away from Base would then be divided by 3.5 and multiplied by her Flight Pay Rate (*i.e.*, 24/3.5 * $49.96) resulting in a total of $342.58 for the rotation.  Def. 56.1 ¶ 87.  Put another way, DeSaint's Flight Pay Rate would be divided by 3.5 resulting in an hourly rate of $14.27 for each hour spent away from base.  Either way, DeSaint effectively would have been paid at a rate of $28.50 for the time she was actually on duty (*i.e.*, $342.58/12 hours).  Again, if the Trip Pay Credit formula results in the highest level of compensation for a Flight Attendant that is the amount that is paid to that Flight Attendant for all hours worked.  Def. 56.1 ¶¶ 69-70.[13]

Pursuant to the Work Rules, "Flight Attendant compensation is paid as an hourly rate for all hours flown or credited."  Def. 56.1 ¶ 59.  Under all of these formulas, Flight Attendants like Plaintiffs are guaranteed to be paid above the minimum wage rate for every time period that they are on duty.[14]

## 5.   **Premium Pay**

Depending on the particular role a Flight Attendant performs on a particular flight, a Flight Attendant also may receive premium pay, such as Flight Leader or Purser pay.[15]  Def. 56.1 ¶ 88.  Flight Attendants also receive payments for Report Pay, Standby Pay, Holding Pay and other such additional payments as part of their compensation; these amounts are in addition to the flight credit-based compensation received for each rotation.  Def. 56.1 ¶ 88.

When Flight Attendants report for a rotation, but do not fly, they receive Report Pay and are paid $10.80 or the amount they would be credited using the Duty Period Credit formula,

---

[13] To further illustrate, under that hypothetical, DeSaint's Flight Pay calculation ($49.96 x 8 hours of flight time) would have resulted in a payment of $399.68 and her Duty Credit calculation ($29.98 x 12 hours of duty time) would have been $359.76.  Accordingly, all of her time on duty would have been accounted for and she would have been paid using the Flight Pay calculation since it results in the highest amount.

[14] When Flight Attendants have questions on pay-related issues they can call what is referred to as the Pay Desk.  Def. 56.1 ¶ 97.  In fact, DeSaint admitted advising other Flight Attendants to contact the Pay Desk when they had questions regarding their compensation.  Def. 56.1 ¶ 98.

[15] A Flight Leader is the lead Flight Attendant on a domestic flight.  Def. 56.1 ¶ 99.  A Purser is the lead Flight Attendant on a transoceanic flight.  Def. 56.1 ¶ 100.

whichever is greater.  Def. 56.1 ¶ 94.  Flight Attendants may also be assigned a "Standby" assignment, which requires them to report to an airport and await potential assignment to a flight or assist with boarding and preparing a flight for departure.  Def. 56.1 ¶ 92.  Flight Attendants are credited one hour of Flight Rate Pay for every two hours of standby time unless they would receive greater compensation under any of the formulas for duties performed during that standby period.  Def. 56.1 ¶ 93.

When a flight is delayed or "held" at the gate for more than an hour, Flight Attendants receive a premium called Holding Pay.  Def. 56.1 ¶ 89.  Holding Pay applies to charter flights as well.  Def. 56.1 ¶ 90.  If the flight is held on the ground after it has blocked out, that time is also incorporated into the flight pay and duty period calculations and treated as a credit.  Def. 56.1 ¶ 91.

Again, these formulas ensure that Plaintiffs are always paid more than minimum wage for time on duty.  Plaintiffs have not presented any evidence that Delta's payment system violates Massachusetts law.

## III.  ARGUMENT

### A.  SUMMARY JUDGMENT SHOULD BE GRANTED UNDER THE APPLICABLE STANDARD OF REVIEW

Summary judgment is to be granted where, as here, the record evidence "show[s] that there is no genuine issue as to any material fact," and that the moving party is entitled to summary "judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Eveden, Inc. v. The N. Assurance Co. of Am.*, No. 10-10061, 2014 WL 952643, at *3 (D. Mass. Mar. 12, 2014).  Stated another way, if the evidence in the record "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and the motion should be granted.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To avoid summary judgment, Plaintiffs may not simply rest

upon the mere allegations of the complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  Nor may the non-moving party "rely on conclusory allegations and unsubstantiated

speculation."  *See Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 9 (1st Cir. 2000). Instead,

Plaintiffs must point to specific evidence establishing a dispute over the facts.  *See Anderson*,

477 U.S. at 248.  Moreover, it is not enough for Plaintiffs to show a dispute of fact; there must be

a dispute over a fact that is material under the applicable substantive law.  *See Santiago v.

Sherwin Williams Co.*, 3 F.3d 546, 549 (1st Cir. 1993) (summary judgment is appropriate when

there is no genuine issue of a fact that has "the potential to affect the outcome of the suit under

the applicable law"); *Eveden*, 2014 WL 952643, at *3 ("Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment.") (internal citation omitted).

## B.    DELTA'S  POLICY FULLY COMPLIES WITH MASSACHUSETTS LAW

Plaintiffs' statutory claim is brought under Massachusetts General Law, Chapter 149,

Section 148 ("Mass. Gen. Laws").  In pertinent part, that section simply requires employers in

Massachusetts to compensate their non-exempt employees at an hourly rate of at least the

minimum wage.  Massachusetts Law does not dictate that an employer set a single wage rate for

hourly employees and employers maintain flexibility to utilize other methodologies for

calculating compensation so long as they ensure that employees are paid the hourly minimum

wage for all time worked.[16]  Mass. Gen. Laws ch. 151, § 1; 455 Mass. Code Regs. § 2.01

---

[16] Plaintiffs claim that Delta's compensation system, which applies to all of its Flight Attendants nationally, is a
violation of Massachusetts Law.  In so doing, they disregard the unique nature of their position and the indisputable
fact that they spend the majority of their time working outside the Commonwealth of Massachusetts.  Under similar
circumstances, courts have refused to apply state laws extraterritorially.  For example, in *United Air Lines, Inc. v.
Indus. Welfare Com.*, 211 Cal. App. 2d 729 (1963) (disapproved on other grounds in *Indus. Welfare Com. v.
Superior Court*, 27 Cal.3d 690, 728, fn. 15 (1980)), a California court dismissed claims brought by a putative class
of Flight Attendants seeking to invalidate United's requirement that Flight Attendants purchase their uniforms based
on a state ban on such policies.  In denying the claims, the court held that a state may not impose its local regulations
if it would create a disparity that would defeat the uniformity that is essential to the functioning of the airline and
would effectively place a burden upon interstate commerce.  *Id.*; *see also Huron Portland Cement Co. v. Detroit*,
362 U.S. 440, 444 (1960) (finding that a state may not impose a burden which materially affects interstate commerce
in an area where uniformity of regulation is necessary).

("When an employee…is paid on a piece work basis, salary, *or any other basis other than an hourly rate… Regardless of the basis used*, whether time rate, commission basis or piece rate, an employee shall be paid not less than the applicable minimum wage each week.") (Emphasis added).

Accordingly, it is Plaintiffs' burden to demonstrate that there is a material issue of fact as to whether they were paid the minimum wage for the hours that they worked.  They have not and cannot meet their burden.

Plaintiffs' Complaint alleges that Delta failed to compensate them fully for:  (1) their work before a flight takes off and after a flight lands; (2) travel time, including overnight travel and travel required to return to their base after a flight; and (3) on-call time (*i.e.*, "when they are required to report for work but are not ultimately assigned to a flight").  *See* Plaintiffs' First Amended Class Action Complaint ("Compl.") (Dkt. 13) ¶¶ 7-11.  When asked to clarify their allegations during their depositions, Plaintiffs claimed they were not compensated for "boarding an aircraft, deplaning an aircraft," "report," "sit times; reserve times, which is the standby," and "lengthy delays without passengers."  DeSaint Dep. 6:23-24, 7:11-12, 7:17-18, 8:7-8; Keenan Dep. 7:13-18.

Plaintiffs' assertions are apparently based on their misunderstanding of Delta's Work Rules even though the Work Rules are unambiguous and Delta representatives have explained it to them repeatedly.  Plaintiffs seem to believe that if they were paid using the Flight Pay formula, that they were <u>only</u> paid for actual flight time and not for other duties because the Flight Pay formula simply multiplies actual flight time by the specific rate assigned to them.  *See, e.g.*, DeSaint Dep. 18-21; Keenan Dep. 9:13-20.  That simplistic interpretation is just plain wrong and it ignores the clear language of the Work Rules and all of the other applicable formulas.

As shown and contrary to their allegations, Delta's compensation system ensures that <u>all</u> time worked by Flight Attendants are credited and accounted for at far more than the minimum

wage.  The Duty Period Credit formula alone ensures that with absolute certainty.  As noted, Delta tracks and credits each hour that Plaintiffs were on duty (that is, working).  At the very least, Plaintiffs are paid ½ of their Flight Pay Rate for all of that time – an amount that is far greater than the applicable minimum wage.  To provide enhanced pay to Flight Attendants who have relatively longer flights, short duty periods or longer periods away from home, Delta utilizes the calculations for Flight Pay, Duty Period Average and Time Away From Base and if those calculations result in a higher overall payment, those formulas are used instead.  In other words, the Duty Period Credit formula unequivocally guarantees that Plaintiffs make no less than ½ the Flight Pay Rate for all hours worked – far in excess of minimum wage – and the Flight Pay, Time Away from Base and Duty Period Average formulas provide a premium over that base rate.  As made clear by the Work Rules, all work performed by Plaintiffs while on duty, including during boarding and deplaning, on-call and travel time is accounted for by Delta, credited and paid.

That Delta's consistent use of these formulas is not in dispute was made all the more clear by Plaintiffs' testimony.  During their depositions, both Plaintiffs directly admitted that they were aware of the various formulas and that they were also aware that a Flight Attendant would be paid the greatest of the four formulas.  *See, e.g.,* Keenan Dep. 26:3-8 (Q. "Did you understand that Delta, in essence, applies all of these formulas to determine for a particular rotation what to pay a Flight Attendant because Flight Attendants are paid 'the greatest of'?"  A. "Yes."); DeSaint Dep. 22:10-15 (Q. "Is it your understanding the way Delta calculates its pay for flight duties provides that the Flight Attendants will get the greatest of a number of calculations?" A. "Yes.").  And both Plaintiffs admitted that the Duty Period Credit calculation accounts for all time between when they report to duty through their release time, which also includes both boarding and deplaning:

> **Q.** **So based on that definition, boarding of the plane would take place during the duty period; isn't that correct?**
>
> **A.** **Yes.**
>
> **Q.** **And based on the definition of the duty period, once you report, the duty period commences; isn't that correct?**
>
> **A.** **Yes.**
>
> **Q.** **And based on the definition of "duty period," deplaning would happen during the duty period?**
>
> **A.** **Yes.**

(DeSaint Dep. 9:5-16); *see also* Def. 56.1 ¶¶ 31, 35-36, 39.[17]  Plaintiffs further refuted their own claims, by also admitting that Flight Pay includes Deadhead flight pay (Def. 56.1 ¶ 80) and that the Trip Pay Credit formula accounts for all time Plaintiffs spent away from their base.  Def. 56.1 ¶ 85.[18]  The undisputed evidence also conclusively demonstrates that under the Work Rule formulas or through the award of premium pay, Plaintiffs were also paid for any time spent on-call, on standby, waiting while a flight was delayed or "held" at or away from the gate. Def. 56.1 ¶¶ 88-89, 91-93.  Accordingly, Plaintiffs have not identified, indeed cannot identify, a single circumstance where they performed work for Delta and that work was not compensated under the Work Rules and consistent with Massachusetts law.

To the extent Plaintiffs still do not understand the Work Rules, the formulas or Delta's compensation policies, such lack of understanding does not substitute for evidence of a material issue of fact. *See Hampel v. Autoridad de Energia Electrica de Puerto Rico*, 716 F. Supp. 52 (D. Puerto Rico 1989) ("Testimony that defies the laws of nature, or that is contradicted by unassailable physical evidence, could not support a verdict at trial, so cannot survive a summary judgment motion.  A plaintiff who sues the United States for having dropped an atom bomb on

---

[17] Moreover, Plaintiffs had a mechanism through which to extend their release time should deplaning or any other post-flight, work-related activity require them to work more than 15 minutes after the flight blocked in at the gate. Def. 56.1 ¶ 41.

[18] Time Away From Base not only includes the time that Plaintiffs were on duty during a rotation, but the non-compensable time that they were off duty as well, including when they were sleeping, out at a restaurant, or watching a movie.  Def. 56.1 ¶¶ 23, 85-86; *see* 455 Mass. Code Regs. §  2.03(2) ("An on-call employee who is not required to be at the worksite, and who is effectively free to use his or her time for his or her own purposes, is not working while on call"); *see also* 29 C.F.R. § 785.35 (time spent traveling from home to work, even when an employee works at different job sites, is normal travel that is not work time).

New York City in 1987, for example, will not get to trial no matter how insistently he claims to have been there when it happened.") (internal citation omitted).

It is well established that the interpretation of a writing is a question of law and not one of fact. *Coll v. PB Diagnostic Sys., Inc.,* 50 F.3d 1115, 1120 (1st Cir. 1995).  Here, Plaintiffs do not appear to even dispute the manner in which Delta compensates them and if they did, that dispute would not be reasonable in light of the incontrovertible written policy and their own testimony. *McArdle v. Town of Dracut*, 909 F. Supp. 2d 48 (D. Mass. 2012) (*affirmed* 732 F.3d 29 (1st Cir. 2013)).  They seem to assert – wrongly – that the application of Delta's compensation policy results in their not being compensated at the minimum wage for some of the tasks that they perform.  That assertion, regardless of whether it is sincere, based on ignorance or misunderstanding, and regardless of how often it is repeated, does not create an issue of fact for a jury to decide.  *See Benson v. Mass. Gen. Hosp.*, 49 Mass. App. Ct. 530, 532 (2000) (finding that "bare assertions and conclusions regarding … understandings, beliefs, and assumptions are not enough to withstand a well-pleaded motion for summary judgment."); *McKeon v. Todd*, No. 971150B, 1998 WL 1270643, at *3 n.4 (Mass. Super. Ct. June 22, 1998) ("Even if I were to consider [plaintiff's] statements and take them as true for purposes of summary judgment, he did not offer any specific evidence to substantiate his statements nor did he offer anything more than mere speculation and conjecture and this is not enough to survive summary judgment.").

### C.      PLAINTIFFS' QUASI-CONTRACT CLAIMS MUST BE DISMISSED

Finally, Plaintiffs also assert a claim for unjust enrichment/quantum merit based on nothing more than their naked assertion that Delta reaped unfair benefit through its alleged violations of the Mass. Gen. Laws.  *See* Compl. ¶ 11, Count III.  Plaintiffs, however, neither plead any facts specific to that claim nor raised any such concerns during their respective depositions.  Rather, they simply state that "Flight Attendants confer a benefit on Delta," "Delta is enriched through receiving the benefit," and "the performing of this unpaid work is a detriment

to the Flight Attendants." Compl. ¶ 11. Such threadbare recitals of the elements of these causes of action cannot form the basis of a legitimate claim. *See Roche v. Morgan Collection, Inc.*, 882 F. Supp. 2d 247, 259 (D. Mass. 2012). Accordingly, Plaintiffs' quasi-contract claims must be dismissed.

Moreover, "Massachusetts courts have repeatedly held that when there is an adequate remedy at law, there can be no unjust enrichment." *Sagar v. Fiorenza*, No. MICV201204081F, 2014 WL 794966, at *8 (Mass. Super. Ct. Jan. 18, 2014) (*citing Mass. Eye & Ear Infirmary v. QLT, Inc.*, 495 F. Supp. 2d 188, 192 (D. Mass. 2007) and *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005)). As Plaintiffs have asserted a claim under the Mass. Gen. Laws, their action for unjust enrichment is duplicative and must be dismissed. *Id.*

## IV.   <u>CONCLUSION</u>

For all the reasons stated above, Delta's motion should be granted and Plaintiffs' Complaint should be dismissed in its entirety, with prejudice. Further, Defendant should be awards its costs incurred in making this motion, together with such other and further relief as the Court deems just, proper, and equitable.

Dated:  May 9, 2014                                MORGAN, LEWIS & BOCKIUS LLP


                                                   /s/ Lisa Stephanian Burton
                                                   Lisa Stephanian Burton (BBO # 562096)
                                                   Peter J. Mee (BBO #677081)
                                                   225 Franklin Street
                                                   Boston, MA 02100
                                                   (617) 341-7700
                                                   (617) 341-7701 (facsimile)
                                                   Email:  lburton@morganlewis.com
                                                           pmee@morganlewis.com

                                                   Ira G. Rosenstein*
                                                   Brendan T. Killeen*
                                                   MORGAN, LEWIS & BOCKIUS, LLP
                                                   101 Park Avenue
                                                   New York, NY 10178
                                                   (212) 309-6000
                                                   (212) 309-6001 (facsimile)
                                                   Email:  irosenstein@morganlewis.com
                                                           bkilleen@morganlewis.com

                                                   *Admitted Pro Hac Vice

                                                   Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was filed through the ECF system on May 9, 2014

and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


*/s/ Lisa Stephanian Burton*
Lisa Stephanian Burton