UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11856-GAO

NANCY DESAINT and BARBARA KEENAN et al,
Plaintiffs,

v.

DELTA AIR LINES, INC.,
Defendant.

<u>ORDER ADOPTING REPORT AND RECOMMENDATION</u>
April 15, 2015

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has recommended that the defendant's motion for summary judgment be granted and that the plaintiffs' cross-motion for summary judgment be denied. The plaintiffs have filed objections to the magistrate judge's Report and Recommendation ("R&R") (dkt. no. 43).

I have reviewed the parties' pleadings, motion papers, the R&R, and the plaintiffs' objections. The objections are essentially a rehearsal of arguments made in the plaintiffs' prior briefs. I agree with the magistrate judge's resolution of the issues presented by the cross-motions for the reasons stated in the R&R, and accordingly I ADOPT the magistrate judge's recommendation in its entirety.

Accordingly, the defendant's Motion for Summary Judgment (dkt. no. 27) is GRANTED, and the plaintiffs' Cross-Motion for Summary Judgment (dkt. no. 31) is DENIED. Judgment shall enter in the defendant's favor.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NANCY DeSAINT and BARBARA KEENAN, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | CIVIL ACTION |
| Plaintiffs, | ) | NO. 13-11856-GAO |
| v. | ) | |
| | ) | |
| DELTA AIR LINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

March 13, 2015

DEIN, U.S.M.J.

## I. INTRODUCTION

Plaintiffs Nancy DeSaint ("DeSaint") and Barbara Keenan ("Keenan") have

brought this putative class action against the defendant, Delta Air Lines, Inc. ("Delta"),

claiming that Delta failed to pay them wages for all of the hours that they worked as

Flight Attendants based out of Logan International Airport in Boston, Massachusetts. By

their First Amended Class Action Complaint, the plaintiffs are seeking to hold the

defendant liable for violations of the Massachusetts Wage Act (Count I), breach of an

implied contract to abide by applicable wage laws (Count II), and unjust

enrichment/quantum meruit (Count III).

The matter is presently before the court on Delta's "Motion for Summary Judgment" (Docket No. 27), by which the defendant is seeking summary judgment on all of the plaintiffs' claims. It is also before the court on the "Plaintiffs' Cross-Motion for Partial Summary Judgment" (Docket No. 31), by which the plaintiffs are seeking judgment as a matter of law on their claim under the Wage Act. The critical issue raised by the parties' motions is whether Delta's Flight Attendant compensation scheme runs afoul of the Wage Act because it fails to pay those employees all of their earned wages. The plaintiffs contend that under Delta's policies, Flight Attendants are paid an hourly rate, known as a "flight pay rate," for flying time or other working hours for which they receive a credit, but never receive compensation for each and every hour of work that they perform for the defendant. Delta contends that its compensation scheme accounts for every minute of work that is performed by its Flight Attendants, and guarantees that those employees are paid well above minimum wage for all hours spent on duty. Accordingly, Delta asserts that it did nothing wrong, and should not be held liable under any of the alleged theories.

The record demonstrates that due to the nature of air travel, Delta's Flight Attendants, like Flight Attendants throughout the airline industry, operate in accordance with a unique work schedule that is entirely unpredictable. Thus, during the course of an ordinary work day, Delta Flight Attendants may travel on a single flight or multiple flights, may fly to nearby destinations or to destinations far from their home base airport, and may have multiple layovers that last a short time or a lengthy layover that requires an

overnight stay. In addition, Flight Attendants may experience disruptions to their schedules, such as flight cancellations or delays, which may extend their time at an airport or cause them to remain grounded altogether. Delta has responded to these circumstances by implementing a nationwide, formula-based Flight Attendant compensation policy that follows the industry standard of applying a base rate, which in Delta's case is the flight pay rate. It then uses the flight pay rate to calculate compensation under each of four formulas, and pays its Flight Attendants in accordance with the formula that yields the highest pay.

As described below, this court finds that the plaintiffs' challenge to Delta's compensation scheme is based upon a mischaracterization of the flight pay rate as a fixed, per hour rate of pay rather than a starting point for determining wages under the relevant compensation formulas. This court also finds that Delta's formula-based structure accounts for all of the time that its Flight Attendants spend on duty, and ensures that those employees are fully compensated for all of the work that they perform for the airline. Because the record demonstrates that the plaintiffs have been paid all of the wages owed to them under the Wage Act, this court recommends to the District Judge to whom this case is assigned that the defendant's motion for summary judgment be ALLOWED, and that the plaintiffs' motion for partial summary judgment be DENIED.

## II. STATEMENT OF FACTS[1]

---

[1] The facts are derived from: (1) Defendant Delta Air Lines, Inc.'s Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("DF") (Docket No.

## The Parties

The defendant, Delta, is a major American airline, which provides scheduled air transportation for passengers and cargo throughout the United States and around the globe. (DF ¶ 1). Its network of flight routes is centered around a system of hub and international gateway airports, which are located in 11 domestic and international cities. (Id. ¶ 2; Def. Ex. 4 at 9 of 152). As of December 31, 2013, the defendant employed approximately 78,000 workers worldwide, including about 19,900 Flight Attendants in the United States. (DF ¶¶ 3-4). For the most part, those Flight Attendants are based at one of the company's eight domestic hubs, which includes Logan International Airport in Boston, Massachusetts ("Logan"). (Id. ¶ 5).

Plaintiff DeSaint is presently employed as a Flight Attendant for Delta, and has held that position for over 29 years. (Id. ¶ 6). Until her retirement in June 2012, plaintiff Keenan also worked as a Flight Attendant for the defendant, and served in that capacity for a total of 44 years. (Id. ¶ 7). During certain periods of their employment as Flight Attendants, the plaintiffs were based out of Boston's Logan Airport. (Id. ¶ 9).

## Flight Attendant Rotations

---

29); (2) the exhibits attached to the Affidavit of Brendan T. Killeen in Support of Defendant Delta Air Lines, Inc.'s Motion for Summary Judgment ("Def. Ex. __") (Docket No. 30); (3) the Plaintiffs' Statement of Material Facts ("PF"), which is set forth in the Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts in Support of Their Cross-Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment (Docket No. 33); and (4) the exhibits attached to the Affidavit of Brant Casavant ("Pl. Ex. __") (Docket No. 33-1).

In order to understand the nature of the parties' wage dispute, it is first necessary to understand the structure of a Delta Flight Attendant's schedule. All of the defendant's Flight Attendants work in what are known as "rotations." (PF ¶ 1). A "rotation" consists of a sequence of flights that begins in a Flight Attendant's home base and ends when the Flight Attendant returns back to the home base and is released from work. (Id.). The time within each rotation when a Flight Attendant is working and on duty for the airline is known as a "duty period." (Id. ¶ 2). The "duty period" begins when the Flight Attendant reports to the airport to begin a rotation or returns to the airport after a layover, and signs in or clocks in to let Delta know that he or she is present for work (the "report time"). (Id.; DF ¶¶ 15-16). The duty period ends at the point when Delta releases the Flight Attendant from duty. (PF ¶ 2). A single duty period can last up to 14 hours for domestic flights and up to 16 hours for international flights. (PF ¶ 4; DF ¶ 34). Due to the nature of airline travel, a duty period also can span more than a single calendar day, such as when a flight takes off late in the day and arrives at its destination on the following day, and can include more than one flight. (PF ¶ 4; DF ¶¶ 32-33). Similarly, a rotation can encompass more than one day, and can consist of more than one duty period. (PF ¶ 3; DF ¶¶ 29-30). For example, a Flight Attendant may report to work at her home base, fly to a destination where she is released from duty, and report to the airport the following day for a flight that will return her to her home base. (PF ¶ 3). Thus, Delta's Flight Attendants perform work on a fluctuating schedule that is dependent upon the flights within the route network to which they are assigned. (DF ¶ 14).

The responsibilities that Delta's Flight Attendants are expected to perform during their duty periods include tasks that take place in the airport, as well as on the aircraft. After reporting to work, Flight Attendants are required to attend a pre-flight meeting with the pilots and other Flight Attendants working the scheduled flight. (Id. ¶ 17). They then proceed to the aircraft, where they perform a number of tasks necessary to ensure that the aircraft cabin is ready to receive passengers before assisting with the boarding process. (Id. ¶ 18). After the plane pushes back from the gate, which is referred to as "block out," Delta's Flight Attendants perform safety demonstrations. (Id. ¶¶ 19, 37). They also perform a variety of duties during the duration of the flight. (Id. ¶ 19).

Once a flight arrives at its destination, the plane pulls into a gate at the airport. (See id. ¶ 38). This is referred to as "block in." (Id.). Following block in, Delta Flight Attendants assist with the deplaning process, and are then released from duty. (See id. ¶¶ 20, 39-41). Delta allots 15 minutes to the duty period in order to account for deplaning. (Id. ¶ 40). However, if a Flight Attendant's duties extend beyond 15 minutes after the plane blocks in, the Flight Attendant can alert Delta's scheduling unit to adjust the release time accordingly. (Id. ¶ 41). The same adjustment is applied to each Flight Attendant who worked on the flight at issue. (Id.). Accordingly, Delta accounts for the fact that Flight Attendant duty periods may need to be adjusted under certain circumstances.

Following their release from duty, Flight Attendants have no further obligations to the airline until it is time to report for the next flight. (See id. ¶¶ 21-25). Thus, if a duty

-6-

period concludes in the middle of a rotation, the Flight Attendants are released into layover rest during which time they may sleep, eat, shop, sightsee and engage in other personal activities prior to their next report time. (Id. ¶¶ 22-24). Similarly, if the duty period concludes at the end of a rotation, Flight Attendants are released for home-based rest, and are not expected to work until the start of their next rotation. (See id. ¶ 25).

Delta sets its Flight Attendant schedules on a monthly basis, after the Flight Attendants have had an opportunity to bid for the rotations that they wish to perform that month. (Id. ¶¶ 26, 43). The bid packets, which are provided to each of the Flight Attendants working out of a particular airport, contain information on all available rotations originating at the airport over the following month. (Id. ¶ 27). For each rotation, the bid packets describe the number and length of the duty periods encompassed within the rotation, the report times for each duty period, the total flight time for each flight within the rotation, and the amount of time that the Flight Attendants are expected to be away from base. (Id. ¶ 42; PF ¶ 15). The bid packets also indicate whether the rotations include any "deadhead" time, which consists of time when a Flight Attendant is sitting in a passenger seat while flying from one place to another instead of working with the flight crew. (DF ¶¶ 42, 83). In addition, the bid packets describe the monetary value of each rotation, and enable Flight Attendants to determine their projected compensation under each of the formulas that Delta applies for purposes of calculating compensation. (See id. ¶¶ 42, 46-47). Those formulas are described below in connection with this court's discussion of Delta's compensation scheme.

After the bidding process is completed, and the schedule for the following month has been set, Flight Attendants are entitled to make adjustments by swapping rotations with other Flight Attendants. (Id. ¶ 44). As a result, Delta does not know whether a Flight Attendant has worked his or her scheduled flights until after the flights have been completed. (Id. ¶ 45).

## Delta's Compensation Scheme

As Delta explains, "[r]ecognizing the unique nature of the Flight Attendant's job and the impossibility of predicting the actual duration of every portion of every Rotation, the airline industry, including Delta, utilizes a compensation system that accounts for a number of variables and compensates Flight Attendants at a different hourly rate depending on the variations within, and the compensation formula applied to, each Rotation." (Def. Reply Mem. (Docket No. 34) at 2). In fact, Delta applies four different types of complicated calculations to each rotation, and pays the Flight Attendant the highest of the four. The result is that the Flight Attendant is guaranteed an average per hour rate of pay that exceeds the minimum wage. This, as detailed below, is in compliance with the Massachusetts Wage Act.

Delta's Flight Attendant compensation scheme is described in detail in Delta's "Flight Attendant Work Rules" ("Work Rules"), a written document containing all of the rules, policies and scheduling procedures that are applicable to such employees. (DF ¶ 58; see also Def. Ex. 6 at 32-59). The Work Rules are provided to all Delta Flight Attendants following their graduation from training. (DF ¶¶ 49-50). In addition, Flight

-8-

Attendants are able to access the Work Rules via the defendant's internal internet site, and can contact Delta's Pay Desk with any questions related to compensation. (Id. ¶¶ 51, 97-98). There is no dispute that the plaintiffs had access to the Work Rules, including any updates and amendments thereto, at all relevant times. (Id. ¶¶ 52, 55-57). Nor is there any dispute that both of the plaintiffs read the Work Rules, were familiar with their contents, and were paid in full under the compensation plan. (See id. ¶¶ 53-54, 60-61, 71).

The portion of the Work Rules that addresses compensation provides that "Flight Attendant compensation is paid as an hourly rate for all hours flown or credited." (Def. Ex. 6 at 32). As the Rules further explain, Delta uses a pay rate known as "hourly flight pay," which it assigns to each Flight Attendant based on his or her length of service. (Def. Ex. 6 at 35; DF ¶¶ 62-63). It multiplies that rate by the number of "hours flown or credited" during a rotation, as determined in accordance with four different formulas known as "Duty Period Credit," "Duty Period Average," "Flight Pay," and "Trip Credit." (PF ¶ 6; DF ¶¶ 69-70). Delta then compensates the Flight Attendant for the rotation using the highest of the sums that have been calculated using the four formulas. (DF ¶ 70).

The dispute in this case basically centers on the significance of the "hourly flight pay." The plaintiffs contend that this is their hourly pay rate, and that it should simply be multiplied by the number of hours they worked during each rotation. However, the hourly flight pay, in reality, is simply a number used as a starting point to calculate compensation for each rotation. As made clear under each of Delta's compensation

-9-

formulas, it is not the rate that each Flight Attendant will be paid for each hour worked.

There is no question that this was known to the plaintiffs, who have been compensated

under this system for years. And while complicated, it is not prohibited by Massachusetts

law, which allows employers to use different methodologies to calculate pay, and allows

for fluctuating pay rates.

<u>The Duty Period Credit Formula</u>

As described above, one of Delta's compensation formulas is the Duty Period

Credit formula, which is known alternatively as the "1 for 2 Duty Credit" formula. (PF

¶ 6). Under this formula, Delta credits Flight Attendants with one hour of flight pay for

every two hours that a Flight Attendant is on duty during a given duty period. (DF ¶ 73).

Accordingly, Delta measures the time of each duty period, from the report time to the

point when the Flight Attendant is released from duty. (PF ¶ 12). It then pays the Flight

Attendant one hour of flight pay for every two hours measured, which amounts to one

half the hourly flight pay rate for each hour the Flight Attendant spent on duty. (DF

¶¶ 73-74; <u>see also</u> Def. Ex. 6 at 36).

Under Delta's compensation scheme, Flight Attendants are never credited with

fewer hours than the hours listed in the bid packet. (DF ¶ 48). Therefore, if the actual

duty period is shorter than the duty period contained in the bid packet, Delta calculates

compensation based on the time set forth in the bid packet. Moreover, because Delta

pays its Flight Attendants the highest amount generated after applying each of its four

compensation formulas, the Duty Period Credit formula guarantees that Flight Attendants

-10-

will be paid, at a minimum, at the rate of one half of their flight pay for each hour that they spend working on duty for the defendant. As of January 1, 2010, Flight Attendants like the plaintiffs, with a length of service of 12 years or more, were assigned a flight pay rate of $43.57. (Id. ¶ 64). Thus, DeSaint and Keenan were guaranteed compensation of at least $21.78 per hour for each hour of work. By January 1, 2013, Flight Attendants with 12 or more years of service were assigned a flight pay rate of $49.96. (Id. ¶ 67). As of that time, therefore, DeSaint was guaranteed compensation of at least $24.98 per hour for each hour of work. There is no dispute that rates of $21.78 and $24.98 per hour are well above the minimum wage. Nevertheless, the plaintiffs contend that the Duty Period Credit formula fails to comply with the Massachusetts Wage Act because Flight Attendants "receive [only] one hour of pay for every two hours on duty." (PF ¶ 12 (quotations and citations omitted)). This argument, however, is premised upon the incorrect assumption that their hourly flight pay is a guaranteed rate, as opposed to the beginning point of a pay calculation.

### The Duty Period Average Formula

The Duty Period Average formula is aimed at Flight Attendants whose rotations consist of relatively short flight segments within multiple duty periods, and it seeks to provide those individuals with higher pay than they would receive under the remaining formulas. (DF ¶ 76). Under the terms of the Duty Period Average formula, Delta credits Flight Attendants with four hours and 45 minutes of time for every duty period within a rotation, regardless whether the duty period is longer or shorter than this period. (Id. ¶

77). It then adds up the total number of credits for the rotation, and multiplies that number by the hourly flight pay rate to arrive at the amount of pay. (Id. ¶ 78). Thus, for example, a Flight Attendant who works four duty periods within a rotation would receive 19 credit hours, which would then be multiplied by the Flight Attendant's flight pay rate to arrive at a compensation figure. (PF ¶ 11). If that figure turned out to be higher than the compensation calculated under the remaining formulas, it would be used to pay the Flight Attendant for that particular rotation. (See DF ¶ 69). There is no dispute that under such circumstances, the Flight Attendant would receive an average hourly rate of pay at more than half the flight pay and well over the minimum wage. However, the plaintiffs claim that the Duty Period Average formula is improper because it does not compensate Flight Attendants for duty periods that exceed four hours and 45 minutes in duration. (See Pl. Mem. (Docket No. 32) at 9). Again, however, this argument is premised upon the incorrect assumption that the law requires a fixed hourly rate to be multiplied by hours on the job. Rather, the law allows compensation to be set using other methods.

### The Flight Pay Formula

Delta also calculates compensation under what is known as the Flight Pay formula. Under this formula, Flight Attendants receive their hourly flight pay rate for the scheduled flight time set forth in the bid packet or the actual flight time included in the rotation, whichever is greater. (DF ¶ 81). As described above, as of January 1, 2010, both of the plaintiffs were entitled to an hourly flight pay rate of $43.57 based on their

-12-

length of service. (See id. ¶ 64). By January 1, 2013, the rate for Flight Attendants with at least 12 years of service had risen to $49.96. (Id. ¶ 67).

The flight time used to calculate compensation under the Flight Pay formula includes the time from when the aircraft blocks out by pulling away from the gate at one airport to the time when the aircraft blocks in by pulling into the gate at another airport. (Id. ¶ 79). It also includes any deadhead flights that are included within the rotation. (Id. ¶¶ 82, 84). According to Delta, this formula is designed to provide higher compensation for rotations involving a relatively high percentage of flight time. (Id. ¶ 80). However, the plaintiffs insist that the Flight Pay formula fails to compensate Flight Attendants for all of the hours worked because it accounts only for block time and not for the time that Flight Attendants spend working prior to a flight's departure or the time spent assisting with the deplaning process. (See PF ¶¶ 7-8). The plaintiffs' argument ignores the fact that this formula can only be used to increase their pay above the Duty Period Credit formula, which applies a specified hourly rate to all hours worked. As detailed below, such a calculation is not prohibited by the Wage Act.

### The Trip Pay Credit Formula

The final formula that Delta applies, known as the Trip Pay Credit formula, is based on the Flight Attendant's time away from base. (See DF ¶¶ 85-87; Def. Ex. 6 at 38). The time away from base encompasses the entire rotation, measured from the report time at the beginning of a rotation to the Flight Attendant's final release at the end of a rotation. (DF ¶ 85). It includes time when a Flight Attendant is not on duty during the

-13-

rotation, such as when the Flight Attendant has been released to layover rest and is free to engage in personal activities. (Id. ¶ 86). Under the Trip Pay Credit formula, Flight Attendants receive one hour of credit and hourly flight pay for every 3.5 hours of time away from base. (Id. ¶ 87; Def. Ex. 6 at 38). Thus, for example, a Flight Attendant who works a rotation that lasts 60 hours will receive credit and hourly flight pay for 17.08 hours of time. (PF ¶ 14; Def. Ex. 6 at 38). Similarly, a Flight Attendant who works a rotation that lasts 45 hours and 50 minutes, and includes two duty periods totaling 18 hours and 15 minutes, will receive credit and hourly flight pay for 13 hours. (See PF ¶ 14; Pl. Ex. 4 at Rotation #1001). Again, it is undisputed that as a result of this calculation, Delta Flight Attendants are paid much more than the minimum wage for each hour worked, and that this formula is only used if it is greater than the Duty Period Credit calculation. Nevertheless, the plaintiffs argue that this formula fails to compensate the Flight Attendants for all of their working hours.

### Additional Pay

Flight Attendants working for Delta may be eligible for additional compensation beyond the compensation that they receive under the four compensation formulas. For example, Flight Attendants may receive a premium under certain circumstances, such as when a flight is held at the gate for more than an hour or the flight involves international travel. (DF ¶¶ 88-90). Additionally, Flight Attendants receive a per diem for meals and other expenses while they are away on a trip. (Id. ¶ 96). The plaintiffs are not challenging these aspects of the defendant's compensation scheme. Accordingly, this

-14-

court's analysis of the plaintiffs' claims will address only Delta's Duty Period Credit, Duty Period Average, Flight Pay and Trip Pay Credit formulas.

Additional factual details relevant to this court's analysis are described below where appropriate.

# III.  ANALYSIS

## A.  Summary Judgment Standard of Review

Delta has moved for summary judgment, pursuant to Fed. R. Civ. P. 56, with respect to all counts of the plaintiffs' complaint.  In addition to opposing the defendant's motion, the plaintiffs have cross-moved for partial summary judgment on their claim that Delta's Flight Attendant compensation formulas violate the Massachusetts Wage Act. "The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citations omitted).  The burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v.

Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275. The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). "'When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56.'" Peck v. City of Boston, 750 F. Supp. 2d 308, 312 (D. Mass. 2010) (quoting Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991)). When the applicable standard is applied to the instant case, this court concludes that there are no genuine

issues of material fact and that the defendant is entitled to judgment as a matter of law with respect to all of the plaintiffs' claims. Therefore, this court recommends that Delta's motion for summary judgment be allowed and that the plaintiffs' motion for summary judgment be denied.

### B. Count I: Claim for Relief Under the Massachusetts Wage Act

The fundamental issue that has been raised by the parties' motions is whether Delta violated the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, by failing to pay the plaintiffs wages for all of the hours that they spent working on duty as Flight Attendants. The plaintiffs argue that under each of the formulas that Delta applies to determine Flight Attendant compensation, the defendant credits and pays its Flight Attendants their hourly rate for some, but not all, of the hours that they spend working. Accordingly, they claim that Delta's compensation scheme deprives Flight Attendants of all wages due under the Wage Act, and that the defendant must be held liable on Count I of their complaint. For the reasons that follow, this court finds that the plaintiffs' argument mischaracterizes Delta's Work Rules, and distorts the significance of the assigned flight pay rates by equating them with fixed hourly rates. Because the record shows that the defendant pays its Flight Attendants all of the wages earned by them based on all hours spent on duty, this court further finds that Delta is entitled to summary judgment on Count I of the plaintiffs' complaint.

### The Wage Act

-17-

Section 148 of the Wage Act provides in relevant part that

> [e]very person having employees in his service shall pay weekly or
> bi-weekly each such employee the wages earned by him to within six
> days of the termination of the pay period during which the wages
> were earned if employed for five or six days in a calendar week, or
> to within seven days of the termination of the pay period during
> which the wages were earned if such employee is employed seven
> days in a calendar week[.]

Mass. Gen. Laws ch. 149, § 148. The purpose of the Wage Act is "to prevent the

unreasonable detention of wages." Weiss v. DHL Express, Inc., 718 F.3d 39, 47 (1st Cir.

2013) (quoting Boston Police Patrolmen's Ass'n, Inc. v. City of Boston, 435 Mass. 718,

720, 761 N.E.2d 479, 481 (2002)).  In order to prevail on a claim under section 148 of the

Act, a "plaintiff 'must prove (1) [s]he was an employee under the statute; (2) [her]

deferred compensation constitutes a 'wage' under the statute; [and] (3) the defendant[]

violated the Act by not paying [the plaintiff her] wages in a timely manner.'" Doucot v.

IDS Scheer, Inc., 734 F. Supp. 2d 172, 192 (D. Mass. 2010) (quoting Stanton v. Light-

house Fin. Servs., Inc., 621 F. Supp. 2d 5, 10 (D. Mass. 2009)).  The only issue in the

instant case is whether Delta paid the plaintiffs all "earned wages 'in a timely fashion,

according to the parameters of the statute[,]'" or whether it improperly withheld certain

wages from its Flight Attendants. Id. (quoting Okerman v. VA Software Corp., 69 Mass.

App. Ct. 771, 775, 871 N.E.2d 1117, 1121 (2007)).

"While the [Wage] Act makes clear on its face that holiday pay, vacation pay, and

definitely determined commissions fall within its protections, the term 'wages' is not

otherwise defined." Weiss, 718 F.3d at 47.  Therefore, this court is obliged to give the

term its ordinary meaning. See Taggart v. Town of Wakefield, 78 Mass. App. Ct. 421,

425, 938 N.E.2d 897, 900 (2010) (noting that court must "ascribe the ordinary and

common meanings to undefined terms" in a statute or regulation). A "wage" is

commonly defined as "payment for labor or services, usually based on time worked or

quantity produced." Sword v. Biofertec, Ltd., 15 Mass. L. Rptr. 489, 2002 WL

31957008, at *2 (Mass. Super. Ct. Dec. 2, 2002) (quoting Black's Law Dictionary 1573

(17th ed. 1999)). "Working time" is defined under 455 C.M.R. § 2.01[2] "as 'all time

during which an employee is required to be on the employer's premises or to be on duty,

or to be at the prescribed work site, and any time worked before or beyond the end of the

normal shift to complete the work.'" Taggart, 78 Mass. App. Ct. at 423, 938 N.E.2d at

899 (quoting 455 C.M.R. § 2.01). However, it "does not include meal times during

which an employee is relieved of all work-related duties." 455 C.M.R. § 2.01.

### Plaintiffs' Mischaracterization of Delta's Work Rules

The plaintiffs' assertion that Delta's compensation structure violates the Wage Act

is premised upon an effort to equate the hourly flight pay rate assigned to the airline's

Flight Attendants with a fixed hourly wage. (See, e.g., Pl. Mem. at 4-5 (equating the

---

[2] "Generally, the types of activities that are considered to be hours worked and compensable are defined through the State regulatory process." Taggart, 78 Mass. App. Ct. at 423, 938 N.E.2d at 899. The regulations set forth in 455 C.M.R. § 2.00 et seq. have been promulgated pursuant to the Massachusetts Minimum Fair Wage Law, Mass. Gen. Laws ch. 151. See id. The parties agree that it is appropriate to look to those regulations for guidance in interpreting the Wage Act. (See, e.g., Pl. Mem. (Docket No. 32) at 7-8, 10; Def. Mem. (Docket No. 28) at 2).

flight pay rate with the "assigned hourly rate" Flight Attendants are to be paid for each hour worked)). Thus, for example, the plaintiffs note that under the Duty Period Credit formula, Delta pays its flight attendants

> for one hour at their *assigned hourly rate* for every two hours in a duty period – i.e., Delta measures the time for each distinct duty period from when a flight attendant reports to the time they are released at the end of that duty period, and then credits that time at one half, so that the flight attendants receive one hour of pay for every two hours on duty.

(Pl. Mem. at 4 (emphasis added; internal quotations and punctuation omitted)).

Significantly, in the case of the Duty Period Credit formula, the plaintiffs agree that they are being compensated for all hours worked. However, because they equate the flight pay rate with a fixed hourly rate of compensation, they object to the fact that they are only being paid one-half of their flight pay rate for each hour worked. This argument ignores the fact that the Work Rules make it clear that the referenced rate is not equivalent to a fixed hourly rate, and describe in detail the fact that Delta uses the flight pay rate as a starting point to calculate compensation in a manner that accounts for the vagaries of the Flight Attendant rotations. (See Def. Ex. 6 at 32-38). Since the rate of actual compensation exceeds the minimum wage (and is fully explained), it is not unlawful. In light of the plaintiffs' recognition that the Duty Period Credit covers all hours worked, and the fact that the other formulas can only increase this amount, the plaintiffs' Wage Act claim must fail.

Delta does not arbitrarily "pick and choose" certain working hours and pay its Flight Attendants only for those hours but not for others. (See Pl. Mem. at 10). Rather, the record shows that it applies specific compensation formulas to each rotation as a whole, pursuant to a written policy, and compensates its employees under the formula that yields the highest pay. As described above, Delta's Flight Attendants are able to apply those formulas to the rotations described in the monthly bid packets, and to determine the monetary value of each rotation before they engage in the bidding process. The plaintiffs do not dispute that they always received the amounts due to them under the applicable formula. The fact that some of these formulas are not a straight calculation of hours worked multiplied by a given rate does not violate the Wage Act.

### Plaintiffs' Challenge to Averaging Hourly Rates

The plaintiffs contend that under the Wage Act, Delta is required to compensate its Flight Attendants on a per hour basis. In particular, they argue that Delta's practice of giving Flight Attendants "'credit' for all of their working [hours] does not address the legal issue of whether it is compensating the flight attendants for each hour that they work." (Pl. Reply Mem. at 4). They contend that Delta's scheme of paying an hourly flight rate for "[h]ours flown" and "hours ... credited" is not equivalent to paying its Flight Attendants an hourly rate for each hour of work, as the Wage Act requires.[3] (Id.).

---

[3] The plaintiffs do not dispute that under Massachusetts law, employers may pay their employees varying hourly rates of pay. Instead, their dispute concerns whether employers must provide compensation on an hour-by-hour basis.

This court finds that there is nothing in the Wage Act to support the plaintiffs' assertion. As described above, § 148 of the Act does not define "wages" to require payment on an hour-by-hour basis. Moreover, there is nothing in the statute's plain language that requires employers to compensate their employees in a particular manner, or precludes them from agreeing to any time or work measurement that they deem to be appropriate. See Mass. Gen. Laws ch. 149, § 148. Thus, as long as the employer pays each of its employees all "wages earned" in a timely manner, and does not violate any other wage law such as the minimum wage statute set forth in Mass. Gen. Laws ch. 151, parties to an employment relationship are free to use whatever compensation structure they see fit. See Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424, 65 S. Ct. 1242, 1245, 89 L. Ed. 1705 (1945) (under Fair Labor Standards Act, employer and employee may establish regular rate of pay "in any manner" and "according to any time or work measurement they desire" as long as minimum hourly rates are respected and method of compensation does not negate the purposes of the statute).[4] The plaintiffs do not dispute that they have received all amounts due to them under the Work Rules, or that those amounts have been paid in a timely manner. Moreover, they do not contend that Delta has failed to comply with the State's minimum wage law or with any other statutory requirement.

---

[4] Courts "may look to interpretations of analogous Federal statutes[,]" including the Fair Labor Standards Act, for guidance in interpreting Massachusetts wage laws. Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 170, 732 N.E.2d 289, 294 (2000).

The Wage Act does require employers, when paying employees their wages, to furnish a "suitable pay slip, check stub or envelope showing[,]" among other things, the "number of hours worked, and [the] hourly rate[.]" Mass. Gen. Laws ch. 149, § 148. However, this does not establish that employers must use a fixed, per hour rate, or that they are prohibited from calculating the hourly rate by dividing earnings by the number of hours worked during the relevant pay period. Moreover, as plaintiffs concede, Delta fully describes its calculations and is available to answer any questions that the Flight Attendants may have about such calculations.

The regulations implementing the Massachusetts minimum wage law define an employee's "Regular Hourly Rate" as follows:

> The amount that an employee is regularly paid for each hour of work. When an employee ... is paid on a piece work basis, salary, *or any basis other than an hourly rate*, the regular[] hourly rate shall be determined by dividing the total hours worked during the week into the employee's total weekly earnings. Regardless of the basis used, *whether time rate*, commission basis or piece rate, an employee shall be paid not less than the applicable minimum wage *each week*.

455 C.M.R. § 2.01 (emphasis added). Accordingly, Massachusetts law recognizes that employers will use a variety of methods beyond a piece work, salary or hour-by-hour method for establishing wages. It further endorses the use of any time rate method that pays no less than an average hourly minimum rate per week.

The plaintiffs contend that § 2.01 of the regulations is inapplicable to their Wage Act claim because "it only governs employees who are compensated on a 'basis <u>other than</u> an hourly rate' and, here, Delta admits that it pays its flight attendants an '<u>hourly</u>

rate.'" (Pl. Mem. at 14). Again, this argument ignores the fact that Delta has made it clear that it is paying its Flight Attendants on the basis of various formulas which result in different amounts of compensation depending on the type of rotation involved. Delta has not limited itself to applying a single hourly rate to all hours worked. While such a calculation is guaranteed under the Duty Period Credit formula, Delta has agreed to provide the Flight Attendants more if the other formulas so dictate. Since § 2.01 recognizes that other formulas can be used, plaintiffs' challenge must fail.

The plaintiffs also contend that this court cannot rely on § 2.01 because it "is concerned with calculating overtime and minimum wage rates, not determining whether a wage is earned or owed under the Wage Act." (Pl. Mem. at 14). This argument is unpersuasive. Workers employed in Massachusetts are entitled to protection under all of the Commonwealth's wage laws. The fact that the plaintiffs have not charged Delta with a violation of the minimum wage law does not remove their wages from that statute's reach or render it inapplicable to their wages. Thus, this court finds it appropriate to look to § 2.01 of the minimum wage regulations for guidance in understanding the requirements of the Wage Act. Indeed, the plaintiffs have conceded as much by relying on the regulation's definition of "Working Time" to support their challenge to the defendant's compensation scheme. (See id. at 7-8, 10).

The case law on which the plaintiffs rely does not alter this court's conclusion that Delta's compensation scheme does not violate the Wage Act. For example, in Norceide v. Cambridge Health Alliance, 814 F. Supp. 2d 17 (D. Mass. 2011), the court considered

a motion to dismiss the plaintiffs' claims that their employer had violated the FMLA's minimum wage requirements by failing to pay them for time that they were required to work during their scheduled meal breaks and after their shifts had ended. There the court rejected the defendant's assertion that it could not be held liable because the average hourly wage that it paid the plaintiffs each week exceeded the minimum wage even if the unpaid hours worked were included in the calculation. Id. at 21-22. The court found that the defendant was not permitted under the statute to ignore hours worked by simply rolling them into a weekly average calculation. Id. at 25-26. In Norceide, the employer told the employees that it was paying a certain rate for all hours worked and then pressured the employees not to report certain hours. Id. That is simply not the situation here.

While the Wage Act requires payment of all "wages earned," it does not purport to dictate the method by which those wages should be determined. See Mass. Gen. Laws ch. 149, § 148. Nor does it preclude employers from calculating average hourly rates, for purposes of furnishing a pay slip, by dividing weekly earnings by the total number of hours worked. As described above, 455 C.M.R. § 2.01 expressly allows such calculations to be made for purposes of determining whether employees are paid no less than "the applicable minimum wage each week." Thus, the court's analysis in Norceide, a case involving a fixed hourly rate, has no application here, where the plaintiffs undeniably receive, at a minimum, a fixed rate for all hours worked, but then have the opportunity to earn more under other formulas.

The plaintiffs' reliance on <u>Hill v. Xerox Corp.</u>, No. C12-0717-JCC, 2014 WL 3396098 (W.D. Wash. July 10, 2014), does not warrant an alternative conclusion. In that case, the plaintiff, an employee at a call center, claimed that her employer's compensation system violated the State of Washington's minimum wage law, which requires employers to pay hourly workers a minimum wage on an hour-by-hour basis, but allows them to pay pieceworkers a minimum wage on an average weekly basis. <u>Hall</u>, 2014 WL 3396098, at *1-2. Pursuant to the compensation system at issue, the employer paid its employees on a per minute basis for time, known as "production minutes," that the employees spent on certain activities, but did not pay them on a per minute basis for time spent on so-called "non-productive" activities. <u>Id.</u> at *1. In order to calculate compensation, the employer added up the hours spent on all activities, and determined an hourly rate "by dividing the employee's compensation for per-minute activities by the total number of hours worked on all activities" during the week, and paid a "subsidy" in order "to ensure that the hourly rate on a per-week basis meets the minimum wage." <u>Id.</u> Thus, the issue was whether the employees should be paid as hourly employees or as piece rate workers.

The <u>Hill</u> court determined that the call center employees were hourly workers whose right to a minimum wage accrued on an hourly basis. <u>See id.</u> at *2-3. Thus, the court reasoned that "production minutes" were nothing more than units of time, and that the employees in question were "being paid based on precise units of time." <u>Id.</u> at *3. It also rejected the defendants' effort to equate its compensation system with one in which

an employer credits workers with pre-established amounts of time for completing certain duties, notwithstanding the amount of time required to complete those duties. Id. The court concluded that "[a] system equating certain tasks to pre-established units of time is very different than one that measures the precise amount of time a task takes. The former may resemble a piecerate system, but the latter more closely resembles an hourly system." Id.

In the instant case, the Flight Attendants were admittedly paid at an hourly rate for all hours worked under the Duty Period Credit formula, and the other formulas only apply if they result in higher pay to the employees. Moreover, Delta is not seeking to circumvent the minimum wag rules, and Massachusetts acknowledges the right of employers to use various compensation methods outside of piece work or a fixed hourly rate. See 455 C.M.R. § 2.01. Accordingly, this court finds that the court's reasoning in Hill provides no support for the plaintiffs' claim that Delta violated the Wage Act.[5]

### C. Request to Certify Questions to the Supreme Judicial Court

Although the plaintiffs claim that they are entitled to summary judgment on their Wage Act claim, they argue that if this court has any doubts, it should certify questions to the Supreme Judicial Court ("SJC"). (Pl. Mem. at 18). In particular, they suggest that

---

[5] Because this court finds that Delta's Flight Attendant compensation scheme does not run afoul of the Wage Act, it is unnecessary to determine whether Delta has preserved its argument that state law cannot be used to invalidate a uniform compensation scheme that applies to all Delta Flight Attendants based in the United States because it would place a burden on interstate commerce. (See Def. Mem. at 12 n.16; Pl. Mem. at 8 n.2).

this court should certify two questions: (1) "whether an employer may pay or 'credit' an hourly employee for only certain hours worked," and (2) "whether an employer complies with the Wage Act when its employees' average hourly wage rate exceeds the minimum wage." (Id.). This court finds that certification is not warranted in this case.

Pursuant to SJC Rule 1:03, a federal court may certify a question to the State's highest court where a case involves questions of state law "which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [the SJC]." Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 (1st Cir. 2013) (quoting Mass. S.J.C. R. 1:03). An issue of state law is determinative if a decision on that issue will provide one of the parties with "the full measure of relief [it] seek[s]." Id. A lack of controlling precedent will be found where "a case 'presents a close and difficult legal issue'" such that "[t]he course that the state court would take is not reasonably clear[.]" Id. at 51 (quoting In re Engage, Inc., 544 F.3d 50, 53 (1st Cir. 2008)).

This court agrees that issues of state law will determine the outcome of this case. Each of the plaintiffs' claims in this matter arises under state law. A response to the questions proposed by the plaintiffs not only would resolve the parties' dispute under the Wage Act, but also would dictate the outcome of the remaining claims as well. In support of those claims, the plaintiffs allege that the defendant's conduct in failing to pay them for all hours worked "constitutes [a] breach of the implied contract that Defendant abide by the wage laws in its payment of wages to its flight attendants[,]" and enabled

-28-

Delta to reap an unfair benefit that "render[s] [it] liable under the common law doctrines of unjust enrichment/quantum meruit[.]" (Am. Compl. (Docket No. 13) at Counts II & III). Thus, a determination that Delta did, or did not, violate the Wage Act would be dispositive of the plaintiffs' claims for breach of contract and unjust enrichment.

Nevertheless, this court finds that certification would not be appropriate because "the course [the] state court[ ] would take is reasonably clear." Easthampton Sav. Bank, 736 F.3d at 51 (quoting In re Engage, Inc., 544 F.3d at 53) (alterations in original). As described above, there is nothing in § 148 of the Wage Act that precludes an employer from paying employees for labor and services in accordance with any time or work measurement that it deems appropriate, as long as its compensation structure does not violate any other provisions of the Massachusetts wage laws. Furthermore, nothing in the Act prohibits employers from determining hourly rates by calculating average hourly pay over the course of the relevant pay period. Thus, although it appears that no case from the SJC has addressed the precise legal issues presented here, this court finds that it is appropriate for those issues to be decided in this forum.

### D.    Plaintiffs' Remaining Claims

Delta also has moved for summary judgment with respect to the plaintiffs' claims for breach of contract and unjust enrichment/quantum meruit. Those claims are also premised upon Delta's alleged failure to pay the plaintiffs for all hours spent working on duty. In light of this court's conclusion that no such failure occurred, this court recommends that Delta's motion be allowed with respect to those claims as well.

## IV. CONCLUSION

For all the reasons described herein, this court recommends to the District Judge to whom this case is assigned that Delta's "Motion for Summary Judgment" (Docket No. 27), be ALLOWED and that the "Plaintiffs' Cross-Motion for Partial Summary Judgment" (Docket No. 31) be DENIED.[6]

/ s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).